IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MONTE ALBERT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:26-CV-86-RP |
| | § | |
| SYSTEMS INTELLIGENCE, LLC and AKIMA, LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendants Systems Intelligence, LLC[1] ("Systems Intelligence") and Akima, LLC's ("Akima") (collectively, "Defendants") Motion to Compel Arbitration and Dismiss or In the Alternative to Stay Proceedings Pending Arbitration ("the Motion"). (Mot., Dkt. 9). Plaintiff filed a Response in opposition to the Motion, (Dkt. 11), and Defendants filed a Reply, (Dkt. 12).[2] Also before the Court is Plaintiff Monte Albert's ("Plaintiff") request for a hearing on the Motion. (Mot. for Hearing, Dkt. 14). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that the motion to compel Plaintiff's claims to arbitration should be granted in part without a hearing.

**I. BACKGROUND**

Plaintiff, proceeding *pro se*, alleges that he was hired by Systems Intelligence on March 31, 2025. (Compl., Dkt. 1, at 1). Akima is purportedly the "parent company" of Systems Intelligence.

[1] Defendant Systems Intelligence, LLC is misnamed in the Complaint as Systems Intelligence, Inc. (Mot., Dkt. 9, at 1 n.1).

[2] Though Plaintiff attempted to file a Sur-reply in opposition to the Motion, (Dkt. 13), the Court did not consider it, as Plaintiff did not move for leave to file a sur-reply. *See* W.D. Tex. Loc. R. CV-7(e) ("A party may file a reply in support of a motion. Absent leave of court, no further submissions on the motion are allowed.").

(*Id.*). Plaintiff states that he was hired "as a senior industry professional embedded at the Army Software Factory in Austin, Texas." (*Id.*). He alleges that he is a "member of protected classes based on national origin and sex," that he "experienced ongoing hostility, marginalization, and adverse treatment after raising technical and professional concerns in the course of performing his job," and that "[l]ess-experienced comparators outside [of his] protected classes were treated more favorably." (*Id.* at 1–2). Plaintiff pleads that, after he "engaged in protected activity," he was terminated on June 17, 2025, for pretextual reasons. (*Id.* at 2). He brings claims for national origin and sex discrimination under Title VII of the Civil Rights Act, age discrimination under the Age Discrimination and Employment Act ("ADEA"), retaliation under Title VII, the ADEA, and the Americans with Disabilities Act ("ADA").

Defendants now move for this case to be compelled to arbitration. (Mot., Dkt. 9). According to Defendants, Akima provides human resources support to Systems Intelligence. (Mot., Dkt. 9-1, at 1). Akima uses a system called ICIMS to manage job applications, hiring, and onboarding. (*Id.* at 2). Wranga Mujadidi ("Mujadidi"), the Senior Director of Human Resources Capital Services and Processes at Akima, declares under penalty of perjury that, when job applicants are given an offer of employment, they receive a set of onboarding documents that must be completed. (*Id.* at 3; Mujadidi Decl., Dkt. 10, at 4–5). The onboarding documents are signed through ICIMS, which must be accessed by the job applicant through their password known only to the applicant. (Mujadidi Decl., Dkt. 10, at 3). According to Mujadidi, the set of onboarding documents includes an arbitration agreement; "[b]efore signing the agreement, the applicant is able to review the document in its entirety, and in fact, must do so, because scrolling all the way through the document to the bottom is required to access the signature box." (*Id.* at 4–5). The applicant is required to "review their name in the box at the bottom of the form and acknowledge the agreement by checking a box indicating their consent," and the ICIMS system informs them that "checking the checkbox above is

equivalent to a handwritten signature." (*Id.* at 5). When these documents, including the arbitration agreement, are executed, the ICIMS system records the actions along with a time/date stamp. (*Id.*). Mujadidi states that individuals "cannot proceed into onboarding or begin employment unless the required onboarding documents, including the arbitration agreement, have been executed through the ICIMS system." (*Id.*).

Regarding Plaintiff in particular, Mujadidi testifies that he executed an arbitration agreement on March 24, 2025, and the agreement is attached to the Declaration ("the Arbitration Agreement"). (*Id.* at 6; Arbitration Agr., Dkt. 10, at 8–11). The Arbitration Agreement provides:

> This Agreement to arbitrate covers all grievances, disputes, claims, or causes of action (collectively, 'claims') in a federal, state, or local court or agency under applicable federal, state, or local laws, arising out of Employee's employment with the Employer and the termination thereof . . . . The claims covered by this Agreement include, but are not limited to . . . claims for wrongful termination claims for discrimination or harassment (including, but not limited to, harassment or discrimination based on race, sex, gender, gender identity or expression, religion, national origin, age, ancestry . . .) . . . [and] claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, including, but not limited to, all claims arising under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), [and] the Americans With Disabilities Act (ADA).

(Arbitration Agr., Dkt. 10, at 8). Claims covered by the Arbitration Agreement "shall be submitted to binding arbitration administered by the American Arbitration Association." (*Id.*). Defendants contend that Plaintiff's claims under Title VII, the ADEA, and the ADA expressly fall within the scope of the Arbitration Agreement.

## II. DISCUSSION

"Under the Federal Arbitration Act [FAA], parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The

FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations and citations omitted). Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Although there is a strong federal policy favoring arbitration, "this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

To determine whether a party should be compelled to arbitration, a court first applies state law to determine whether the parties formed "*any arbitration agreement at all.*" *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). Second, the court interprets the contract "to determine whether *this* claim is covered by the arbitration agreement." *Id.* (emphasis in original).

**A. Validity of the Arbitration Agreement**

First, in this case, Defendants assert that Texas law applies and that the Arbitration Agreement is valid under Texas law. (Mot., Dkt. 9-1, at 7–8). The Fifth Circuit has approved of

using the "law of the forum" for the first step of the analysis where there has "been no showing that the law of any other arguably more appropriate state materially differs in respect to the present issue." *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). Plaintiff does not assert that another state's law should apply to the validity question. Accordingly, the Court will apply Texas law in determining the validity of the Arbitration Agreement.[3] Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012).

On March 24, 2025, Plaintiff and Defendants, through Akima's Chief Human Resources Officer, executed the Arbitration Agreement. (Arbitration Agr., Dkt. 10, at 10; Mujadidi Decl., Dkt. 10, at 6). Soon after, Plaintiff proceeded to work for Systems Intelligence. (Mujadidi Decl., Dkt. 10, at 6). Plaintiff asserts that he "does not recall being presented with a standalone arbitration agreement in a manner that clearly communicated that he was waiving his right to pursue statutory claims in court" and that the record does not "demonstrate[] a knowing and voluntary agreement to arbitrate." (Resp., Dkt. 11, at 1–2). But Plaintiff does not cite any case law or statutory language requiring a "standalone" arbitration agreement,[4] and the Arbitration Agreement clearly waives his

[3] Though the Arbitration Agreement states that "[t]he Arbitrator shall . . . apply the law of the State of Virginia" when ruling on "a motion for summary adjudication and/or summary judgment," it does not state that Virginia law applies to questions regarding the Arbitration Agreement itself. (*See* Arbitration Agr., Dkt. 10, at 9). The Court therefore reiterates that it will apply Texas law, given that the Arbitration Agreement appears to have been signed in Texas by Plaintiff, a Texas resident, and performed in Texas. *See Am. Nat. Ins. Co. v. Smith*, 13 S.W.2d 720, 722 (Tex. Civ. App. 1929), *writ refused* (May 8, 1929) ("It is a familiar rule that the validity of a contract is governed by the law of the place where it is made."); *Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*, 778 S.W.2d 492 (Tex. App.—Dallas 1989, writ denied) ("The general rule is that the law of the State where the contract is made controls with respect to validity, interpretation and obligations under the contract.").

[4] Indeed, courts frequently find arbitration agreements valid that were contained within sets of documents. *See, e.g.*, *Bradford v. Brident Dental Servs., LLC*, No. CV H-23-3460, 2024 WL 1839458, at *4–7 (S.D. Tex. Apr. 26, 2024); *GC Services Ltd. P'ship v. Little*, No. CV H-19-1180, 2019 WL 5425032, at *2, *7–8 (S.D. Tex. Oct.

right to pursue statutory claims in court that are related to his employment. Nor does Plaintiff sufficiently "put the making of the arbitration agreement" at issue to warrant holding a trial on the existence of the Arbitration Agreement, as he has not unequivocably denied signing the Arbitration Agreement or produced "'some evidence' supporting his position" that he did not sign it. *See Chester v. DirecTV, LLC*, 607 F. App'x 362, 363–64 (5th Cir. 2015) (first citing 9 U.S.C. § 4; and then citing *T & R Enters., Inc. v. Cont'l Grain Co.,* 613 F.2d 1272, 1278 (5th Cir. 1980)). Additionally, the Fifth Circuit has held that a party's purported "inability to remember signing [a contract] is not sufficient to raise a material issue as to the validity of the agreements." *Batiste v. Island Records Inc.*, 179 F.3d 217, 223 (5th Cir. 1999). These arguments as to the validity of the Arbitration Agreement therefore fail.

Plaintiff also argues that Defendants do not provide evidence establishing "how the agreement was presented or whether it was meaningfully reviewed" or "evidence of the actual presentation or user interface." (Resp., Dkt. 11, at 2). This argument is unpersuasive. For one, "[i]t is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003); *see also CBE Grp. Inc. v. Lexington Law Firm*, 993 F.3d 346, 351 (5th Cir. 2021) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he reads it or believed it had different terms.") (quoting *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005)). Whether Plaintiff "meaningfully reviewed" the document does not alter the evidence that he signed it. *See St. Petersburg Bank & Tr. Co. v. Boutin*, 445 F.2d 1028, 1032 (5th Cir. 1971) ("One who reads a written document, or signs it (**even without reading it**) is bound

---

23, 2019); *Soni v. Solera Holdings, Inc.*, No. 3:20-CV-02925-M, 2021 WL 1726891, at *4 (N.D. Tex. Mar. 23, 2021), *aff'd sub nom. Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046 (5th Cir. May 4, 2022).

by its terms.") (emphasis added). Moreover, Plaintiff cites no case law or statutory language that requires Defendants to show evidence of the "user interface."

Given that Plaintiff signed the Arbitration Agreement and thereafter worked for Systems Intelligence, and given that Plaintiff has not shown "fraud, misrepresentation, or deceit," *see CBE Grp.*, 993 F.3d at 351, the Court holds that the Arbitration Agreement is valid under Texas law. *See D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citations omitted) ("An at-will employee who receives notice of an employer's arbitration policy and continues or commences employment accepts the terms of the agreement as a matter of law."); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003) (citing *In re Halliburton*, 80 S.W.3d 566, 569 (Tex. 2002)) (explaining that "mutual promises to submit all employment disputes to arbitration constituted sufficient consideration, because both parties were bound to the promises to arbitrate").

**B. The Arbitration Agreement's Scope**

Second, the Court addresses whether Plaintiff's claims fall within the Arbitration Agreement. Plaintiff does not contest that his claims fall within the Arbitration Agreement's Scope, and for good reason—his claims are unequivocably covered by the Arbitration Agreement. Plaintiff brings claims related to his employment for discrimination and retaliation under Title VII, the ADEA, and the ADA. (Compl., Dkt. 1, at 2). The Arbitration Agreement explicitly covers claims for discrimination and claims brought under these three specific statutes. (*See* Arbitration Agr., Dkt. 10, at 8). The Court will therefore grant the motion to compel arbitration.

Plaintiff asks the Court to stay this case rather than dismiss if arbitration is compelled. (Resp., Dkt. 11, at 3). Pursuant to *Smith v. Spizzirri*, the Court will stay the case and not dismiss it. 601 U.S. 472, 475 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). The Court

will also require the parties to file quarterly joint status reports to keep the Court apprised of the status of the arbitration proceedings and any other relevant matters.

## III. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' Motion to Compel Arbitration and Dismiss or In the Alternative to Stay Proceedings Pending Arbitration, (Dkt. 9), is **GRANTED IN PART**, such that the parties are **ORDERED** to proceed to arbitration, and Plaintiff's claims are **STAYED** pending arbitration. All other relief requested in Defendants' motion, including dismissal, is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file quarterly joint status reports detailing the status of the arbitration proceedings and any other relevant matters, with the first status report being due on or before **October 26, 2026**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Hearing and for Ruling on Defendants' Motion to Compel Arbitration, (Dkt. 14), is **DISMISSED AS MOOT**.

**SIGNED** on July 28, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE